Filed 11/27/23; Certified for Publication 12/18/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CRISTA MILLER,<br><br>        Plaintiff and Appellant,<br>v.<br>PACIFIC GAS AND ELECTRIC<br>COMPANY, et al.,<br><br>        Defendants and Respondents. | A165638<br><br>(San Francisco City & County<br> Super. Ct. No. CGC20582606) |

Crista Miller tripped on a vertical misalignment of less than one inch between the metal plate covering an underground utility vault owned by Pacific Gas and Electric Company (PG&E) and the surrounding sidewalk adjacent to property owned by Hip Sen Benevolent Association (Hip Sen), causing her to fall and hurt her ankle. The trial court granted summary judgment, ruling that the lawsuit was barred by the trivial defect doctrine. We affirm.

**BACKGROUND**

*The Incident*

At 11:30 p.m. on Saturday, February 16, 2019, Miller and her husband were walking on Washington Street toward Grant Street in San Francisco's Chinatown on what they described as a "steep downhill slope."

1

It was a typical Saturday evening in the neighborhood. It had drizzled earlier in the evening and the night sky was dark, foggy, and misty. The sidewalk was wet and crowded with people. Miller did not recall it " 'feel[ing] dark' " as the sidewalk was in an urban setting with lights from multiple sources, including streetlights and store lights.

Miller tripped on the vertical misalignment between a metal plate covering an underground utility vault owned by PG&E and the surrounding sidewalk adjacent to property owned by Hip Sen. While walking downhill, she stepped with her left foot on the rectangular, metal plate cover near the center of the sidewalk. A toe on her left foot contacted the differential at the left, downhill side of the metal plate, and she fell forward and landed on the sidewalk.

The parties agree the height differential between the sidewalk edge and metal plate was less than one inch. The metal plate covering the utility vault was made of ordinary, diamond-plated metal. It was "neither 'super smooth' nor 'strange' in any way," but it was wet from the earlier rainfall. Miller asserted she did not see the height differential before she tripped because she was going downhill and therefore looking some eight to ten feet ahead.

### *No History of Tripping Accidents at the Location*

The City and County of San Francisco (the City)'s 311 call system is the central repository for complaints and service requests concerning sidewalks. A City employee found no complaints or service requests concerning the incident location between January 1, 2010 and February 16, 2019 (date of incident). Hip Sen was also not aware of any prior tripping incidents having occurred on the sidewalk adjacent to its property at any time.

### City Repair Guidelines

The City's Department of Public Works has guidelines concerning the repair of sidewalk defects to improve accessibility within the area of a sidewalk most traveled by pedestrians: Good Neighbor Guidelines (Order No. 177,526) and Guidelines for Inspection of Sidewalk Defects (Order No. 178,884).  Priority repairs include sidewalk defects of vertical displacement, meaning the sidewalk pavement or curb is displaced by a half-inch or more from the abutting pavement or curb.

After Miller's fall, a City inspector evaluated the incident location in July 2019 and issued notices requiring PG&E and Hip Sen to repair the vertical misalignment of the sidewalk and metal plate cover.  The repairs were completed.

### Motions for Summary Judgment

Miller sued PG&E and Hip Sen, alleging general negligence and premises liability (a theory of negligence) against both defendants.  The gravamen of the complaint was that defendants had allowed a dangerous condition – the vertical misalignment of the metal plate cover and surrounding sidewalk – to exist.

PG&E and Hip Sen filed separate motions for summary judgment on the basis that the vertical misalignment did not constitute a dangerous condition because it was trivial in nature and size and there were no other factors that raised a question of fact regarding the triviality of the defect.  In opposition, Miller argued there was a triable issue of fact based on evidence that the vertical alignment was more than one-half inch in size and based on the City's guidelines regarding repairs.  Miller further argued the circumstances surrounding her accident raised a triable issue as to the existence of a dangerous condition despite its trivial nature and size.

3

The trial court granted the motions based on the trivial defect doctrine. The court found defendants had met their initial burden of demonstrating the height differential between the sidewalk and metal plate cover was trivial in nature and therefore did not constitute a dangerous condition requiring repair or warning. It further found Miller had failed to meet her burden of showing a triable issue of material fact concerning triviality. It also found no triable issue of material fact as to whether the vertical misalignment was a dangerous condition based on the City having issued notices requiring PG&E and Hip Sen to repair the sidewalk and metal plate cover. "As PG&E points out, the City's policy is to issue Notices to Repair whenever there is a sidewalk differential of .5 inches or greater. . . . However, the City's notice guidelines do not impose a legal duty to repair defective conditions under the trivial defect standard. The Court finds that sidewalk maintenance need not meet the .5-inch differential throughout the entire City in order for [defendants] to . . . avail [themselves] of the trivial defect doctrine."

The court entered a judgment of dismissal in favor of defendants on June 9, 2022, and this appeal ensued.

## DISCUSSION

### I. Standard of Review

We review the propriety of a grant of summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) As in the trial court, we first determine whether the moving party has met its initial burden to establish facts justifying judgment in its favor; if so, we then decide whether the opposing party has demonstrated the existence of a triable, material issue of fact. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th

4

621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.)*

## II. Vertical Misalignment Was a Trivial Defect as a Matter of Law

### A. Trivial Defect Doctrine

To recover damages for either negligence or premises liability, Miller must prove defendants breached a legal duty to either repair or warn about the existence of a dangerous condition – the vertical misalignment – that allegedly caused her to trip and fall. (See *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 [elements of premises liability]; *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 397 [elements of negligence liability].)

It is well settled law that landowners are "not liable for damages caused by a minor, trivial or insignificant defect in property." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927.) In the context of sidewalk defect cases, landowners "do[] not have a duty to protect pedestrians from every sidewalk defect that might pose a tripping hazard – only those defects that create a *substantial* risk of injury to a pedestrian using reasonable care." (*Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757 (*Nunez*); see *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1109–1110 (*Huckey*) [while the height differential of sidewalk defect "posed *some* risk of injury," and was evidence of a "tripping hazard," to constitute a dangerous condition the height differential and the area surrounding it must pose " 'a substantial . . . risk of injury' "].) This simple principle of law is referred to as the trivial defect doctrine – "it is not an affirmative defense but rather an aspect of duty that [a] plaintiff must plead and prove," and it applies where liability is

5

alleged against both governmental entities and private landowners such as defendants. (*Caloroso*, at p. 927.)

Whether a particular sidewalk defect is trivial and nonactionable may be resolved *as a matter of law* using a two-step analysis. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105 [citing cases applying two-step analysis]; see *Nunez*, *supra*, 81 Cal.App.5th at p. 758 [accord].) First, we review the evidence of the size and nature of the defect. (*Huckey*, at p. 1105.) If that analysis supports a finding of a trivial defect based on its physical characteristics, we then consider whether the defect was likely to pose a significant risk of injury because there was evidence that the conditions of the walkway surrounding the defect or the circumstances of the accident " 'ma[de] the defect more dangerous than its size alone would suggest.' " (*Ibid*.) If the evidence of additional factors does not indicate the defect was sufficiently dangerous to a reasonably careful person, we deem the defect trivial as matter of law. (*Id*. at p. 1105.)

One court of appeal has recently rejected this two-step analysis and used "a holistic multi-factor framework for assessing triviality" as a matter of law, holding that "the size of the defect is but one of the many circumstances to be considered; however, size remains the ' "most important" ' of the dangerous condition factors." (*Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 114.)

Under either approach, we conclude the vertical misalignment of the metal plate cover and surrounding sidewalk was a trivial defect as a matter of law barring this lawsuit.

6

## B. Defendants Made Prima Facie Showing that Vertical Misalignment Was Trivial Defect

Defendants met their initial burden of presenting evidence (both testimonial and photographic) demonstrating prima facie that the vertical misalignment was a trivial defect based on the following factors: (1) the size, nature, and quality of the defect – a vertical misalignment of less than one inch with no broken pieces or jagged edges on the metal plate or surrounding sidewalk; (2) visibility – although the accident occurred at nighttime the area was illuminated with artificial lighting from multiple sources and there was no debris or material on the metal plate or surrounding sidewalk that concealed the defect; and (3) lack of prior incidents – there was no evidence of tripping incidents before Miller's accident.  (See *Huckey*, *supra*, 37 Cal.App.5th at p. 1105 [discussing factors to be considered in making prima facie showing that sidewalk defect was trivial].)

## C. City Guidelines Do Not Raise a Triable Issue

In challenging defendants' prima facie showing, Miller contends the vertical misalignment cannot be deemed trivial as a matter of law because City guidelines require repair of sidewalk height differentials one-half inch or greater and the City inspector ordered repairs of the misalignment. Therefore, Miller contends, a trier of fact could find the virtual misalignment was a dangerous condition, citing to *Laurenzi v. Vranizan* (1945) 25 Cal.2d 806 (*Laurenzi*).  We disagree.

Miller's reliance on City guidelines requiring repair of sidewalk height differentials of one-half inch or great is unavailing as she has presented *no* evidence that the City's standard for repair of sidewalk defects has "been accepted as the proper standard in California for safe sidewalks."  (*Caloroso*, *supra*, 122 Cal.App.4th at pp. 928–929 [defendant's noncompliance with

7

certain building codes and standards did not raise triable issue of fact that sidewalk crack was dangerous].)

Miller's reliance on the repair orders is also unavailing, as is her reliance on *Laurenzi*. In *Laurenzi*, the plaintiff's foot became wedged in a large hole in a sidewalk (a foot long, up to two and one-half inches deep, and from two inches wide at one end to six inches wide at the other end); at the time of the fall, the area was poorly lit, the sidewalk was wet with scattered carrot top debris, and vegetable crates were stacked on either side of hole; and a City inspector testified that he would consider the sidewalk condition to be "hazardous." (*Id.* at pp. 808, 811, 812). Here, we are concerned with an unobscured vertical misalignment of less than one inch, a nighttime urban location illuminated by artificial lights from multiple sources, and no evidence that the City inspector's decision to order repairs was premised on a finding that the vertical misalignment was a hazardous condition. (See *Nunez, supra*, 81 Cal.App.5th at p. 759 [rejecting argument that *Laurenzi* stands for proposition that a city's determination that a sidewalk defect is hazardous and in need of repair precludes finding the defect was trivial as a matter of law; "[t]he *Laurenzi* court did not hold . . . that the city's admission that a particular defect might be dangerous creates a triable issue of fact as to whether *an otherwise trivial defect* constitutes a dangerous condition," italics added].)

**D. Circumstances of Accident Do Not Raise a Triable Issue**

Having found defendants made a prima facie showing that the vertical misalignment is a trivial defect, we next examine Miller's argument that the circumstances of her accident raise a triable issue of material fact as to whether the defect could be found to be a dangerous condition that would put a reasonably careful pedestrian at significant risk of injury. She asks us to

8

consider that the following circumstances – the steep downward decline of the sidewalk, the weather, the nighttime hour, and the crowds on the street – all combined to make the height differential less obvious than it would appear in the daylight, thereby creating a dangerous condition necessitating denial of summary judgment.  We disagree.

As to the decline of the sidewalk, we find unavailing Miller's contention that the visibility of the vertical misalignment was obscured because the incident occurred on a steep (9% grade) downhill slope, affecting her depth perception and creating an "optical illusion" that the sidewalk surface was level.  Even accepting her assertions concerning the grade percentage of the downward slope,[1] neither in the trial court nor on appeal does Miller cite to any relevant authority, legal or scientific, supporting her assertions concerning human vision and perception of an "optical illusion."  (See *McGonnell v. Kaiser Gypsum Co., Inc.* (2002) 98 Cal.App.4th 1098, 1106 [party cannot manufacture triable issue of fact with self-serving opinion and speculation devoid of any basis, explanation, or reasoning].)  While Miller refers to the Americans with Disabilities Act standards regarding maximum

_____

[1]     We have disregarded defendants' arguments challenging Miller's assertions concerning the grade percentage of the downward slope of the sidewalk.  In the absence of any showing that the trial court granted objections to this evidence, we presume the court overruled any objections and considered the disputed assertions in ruling on the motions.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)  While impliedly overruled evidentiary objections may be renewed on appeal, the burden is on defendants to properly present those arguments and they have failed to do so.  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  PG&E does not include record citations showing it made written evidentiary objections in the trial court, and it proffers no citations to relevant statutory or case authority.  Hip Sen similarly does not include record citations showing it made written evidentiary objections in the trial court, and while it cites to Evidence Code sections, it offers no explanation as to how the statutory provisions support its argument.

9

percentage grades allowed for ramps, she has not cited any law indicating that is a relevant standard for determining whether a sidewalk defect constitutes a dangerous condition. (See *Caloroso*, *supra*, 122 Cal.App.4th at p. 928 [evidence that defendant's noncompliance with certain building codes and standards made sidewalk crack dangerous did not raise triable issue as there was no evidence that the codes and standards "have been accepted as the proper standard in California for safe sidewalks"].)[2]

We also are not persuaded by Miller's argument that the weather, the nighttime hour, and the crowds on the street combined to make this a dangerous condition. It was a typical February evening in San Francisco's Chinatown. The sky was foggy and misty and the streets were wet from an earlier rainfall, but according to Miller it was not actively raining and the street was illuminated. Moreover, despite the frequency of heavy pedestrian traffic in the area, there is no evidence that anyone other than Miller had complained of tripping at that location.

We therefore agree with the trial court that Miller failed to proffer evidence sufficient to raise a triable issue of fact as to "whether the size of the height differential itself, or any other circumstances concerning it, rendered it a dangerous condition." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1108.)

## III. Miller's Claim that Complaint Supports Theory of Negligence Per Se Is Forfeited

Miller argues summary judgment should be reversed because the City's repair notices to PG&E and Hip Sen for their violations of the City's

---

[2] While not dispositive, we note the photographs in the record do not reflect that the sidewalk was on one of the steep hills for which the City is famous; rather they reflect the sidewalk's downward slope was gradual and unremarkable. Additionally, Miller did not submit photographic evidence showing that at nighttime the vertical misalignment was not visible.

Guidelines render them liable under a theory of negligence per se. This argument is forfeited.

Miller did not raise this argument to the trial court although there was no barrier to her doing so. It is a fundamental principle that an appellate court will generally not consider an issue presented for the first time on appeal that could have been but was not presented in the trial court. (See *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398–1399.) Further, appellate arguments presented for the first time in a reply brief (as Miller has done) are forfeited without a showing of good cause. (See *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636, fn. 8.; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2.) We see no reason not to apply the general rules of forfeiture.

## IV. Conclusion

In sum, the trial court properly granted summary judgment as reasonable minds could come to only one conclusion in this case – that the vertical misalignment of the metal plate cover and surrounding sidewalk was a trivial defect. Despite Miller's argument to the contrary, we see no evidence from which a reasonable trier of fact could find the trivial sidewalk defect posed a *substantial* risk of injury to a foreseeable pedestrian exercising due care. Therefore, we shall affirm.

### DISPOSITION

The judgment is affirmed. Defendants and respondents are awarded costs on appeal.

11

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Rodríguez, J.


A165638/*Miller v. Pacific Gas and Electric Company, et al.*

12

Filed 12/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CRISTA MILLER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, et al.,<br><br>        Defendants and Respondents. | A165638<br><br>(San Francisco City & County<br> Super. Ct. No. CGC20582606) |

BY THE COURT:‡

        The written opinion which was filed on November 27, 2023, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Dated: ___12/18/2023_____          _____Fujisaki, Acting P.J._____
                                            Acting Presiding Justice

---

‡ Petrou, J., Fujisaki, Acting P.J., Rodríguez, J.

Trial Court:      San Francisco County Superior Court

Trial Judge:      Hon. Richard B. Ulmer, Jr.

Counsel:      Law Office of Nikolaus W. Reed, Nikolaus Reed, for Plaintiff and Appellant.

Gough & Hancook, Mark Hancock, Gayle Gough, and Peter Messrobian, for Defendants and Respondents Pacific Gas and Electric Company, et al.

Phillips Spallas & Angstadt, Robert Phillips, Michael Halvorsen, and Matthew Gardner, for Defendants and Respondents, Hip Sen Benevolent Association.